121 F.3d 541
 21 Employee Benefits Cas. 1853, 97 Cal. Daily
Op. Serv. 6489,
97 Daily Journal D.A.R. 10,613,
Pens. Plan Guide (CCH) P 23936T
John T. CROTTY and Suzanne S. Crotty, husband and wife,
Plaintiffs-Appellants,
v.
J. Gordon COOK, as Trustee for the Pension and Profit
Sharing Plans of Renaud, Cook, Videan, Geiger & Drury, P.A.,
an Arizona professional corporation and as a partner,
shareholder, equity owner, director and/or officer, actual
or de facto, of Renaud, Cook, Videan, Geiger & Drury, P.A.;
Renaud, Cook, Videan, Geiger & Drury, P.A., an Arizona
professional corporation; William W. Drury, Jr., as a
partner, shareholder, equity owner, director and/or officer,
actual or de facto, of Renaud, Cook, Videan, Geiger & Drury,
P.A., Defendants-Appellees.
 No. 96-15576.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 8, 1997.
Decided Aug. 15, 1997.
 
 Stephen E. Silver, Burch & Cracchiolo, Phoenix, AZ, for plaintiffs-appellants.
 Richard A. Segal, Gust Rosenfeld, Phoenix, AZ, for defendants-appellees.
 Mark S. Flynn, United States Department of Justice, Washington, DC, for the Secretary of Labor, as amicus curiae.
 Appeal from the United States District Court for the District of Arizona; Roslyn O. Silver, District Judge, Presiding. D.C. No. CV-93-00645-ROS.
 Before: PREGERSON, JOHN T. NOONAN, Jr., and KLEINFELD, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Appellants John T. Crotty and his wife, Suzanne S. Crotty, appeal the district court's grant of summary judgment in favor of Appellees. John Crotty, an attorney, participated in the "profit sharing plan" and the "money purchase plan" (together the "Plans") at the law firm where he worked. He contends that the administrator of the Plans withheld his ERISA benefits and failed to provide certain requested information, including copies of summary plan descriptions, as required by ERISA. Crotty seeks to recover his ERISA benefits under 29 U.S.C. § 1132(a), and he seeks statutory damages under 29 U.S.C. § 1132(c) for the plan administrator's failure to provide certain requested information.
 
 
 2
 The district court granted summary judgment in favor of Appellees concluding that Crotty lacked ERISA standing because during the district court litigation he received all of his vested benefits under the Plans. The district court also ruled that Crotty was not entitled to damages under § 1132(c) for the plan administrator's failure to provide information because Crotty never requested the information in writing.
 
 
 3
 We conclude that even if Crotty did receive his vested benefits during the litigation, he has standing because he had not received those benefits when he filed his complaint. We also conclude that Crotty may be entitled to damages under § 1132(c) because he orally requested plan information that the plan administrator was required to give to him. Accordingly, we reverse the district court's grant of summary judgment in favor of Appellees.
 
 BACKGROUND
 
 4
 Crotty was employed as an attorney at the law firm of Renaud, Cook, Videan, Geiger & Drury, P.A. (the "firm"), from August 1, 1989, to September 4, 1992. Crotty participated in the Plans that were offered by the firm. Appellee Cook was the administrator and trustee for the Plans during Crotty's employment with the firm.
 
 
 5
 In early 1991, Cook allegedly promised Crotty that Crotty's compensation would equal 37.5% of Crotty's collected billings. In November 1991, the firm informed Crotty that contributions to the Plans would be deducted from the 37.5% of his collected billings. In December 1991, Cook gave Crotty a statement showing that 37.5% of his collected billings for 1991 amounted to $80,102.63. According to this statement, Crotty was scheduled to earn $80,102.63 in the form of $55,800 in base salary, $9,817.32 in bonus, $4,272.22 in pension plan contributions, and $10,213.09 in profit sharing plan contributions. The Appellees claim that the $80,102.63 figure given in December 1991 was only an estimate.
 
 
 6
 Crotty alleges that in January 1992, he orally requested information about the Plans from Cook's assistant. Crotty never received any summary plan description or any written plan information from the time he became eligible for participation on August 1, 1991, until he left the firm in September 1992.
 
 
 7
 In October 1992, Crotty received a statement of his account balances in the Plans. These reported amounts were significantly lower than the account balances listed in Crotty's December 1991 statement. Also in October 1992, Crotty received copies of the Plans, but not the summary plan descriptions.
 
 
 8
 In November 1992, the Plans' attorney advised Crotty that his account balance in the Plans for the 1991 year was only $8,150. Crotty then filed suit against the Appellees in the United States District Court for the District of Arizona.
 
 
 9
 In the pretrial order, Crotty asserted two types of ERISA claims against the Appellees: (1) "claims for unfunded and unpaid Plan benefits for 1991 and 1992," and (2) "a claim for penalties based upon the Plan administrator's failure to provide information to which participants are entitled under ERISA."[1]
 
 
 10
 The parties also stipulated that the Plans constituted "qualified retirement plans subject to the reporting and disclosure requirements of the Internal Revenue Code and Title I of ERISA during the period of August 1, 1989, through September 4, 1992."
 
 
 11
 The parties further stipulated that Appellees calculated Crotty's Plan benefits for 1991 and 1992 based on "Annual Compensation" of $63,463.60 and $34,788.10, respectively.[2] Crotty accepted the payment of vested benefits as calculated by the Appellees for the 1991 and 1992 fiscal years but explicitly stated in a letter sent to Cook that he reserved his rights to "additional compensation due and owing, or for additional sums to be contributed to said [P]lans based upon such additional compensation."
 
 DISCUSSION
 I. Subject Matter Jurisdiction
 
 12
 Appellees argue that the district court had no jurisdiction over the alleged unpaid benefits Crotty seeks because Appellees never contributed those unpaid benefits to the Plans. Appellees are incorrect. The failure to make a required contribution to an ERISA Plan is a "delinquent contribution" that violates 29 U.S.C. § 1145:
 
 
 13
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 14
 A violation of § 1145 is a claim that confers subject matter jurisdiction on the federal courts. See id. § 1132(e)(2) ("an action under this subchapter ... may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found").
 
 
 15
 Appellees cite Freeman v. Jacques Orthopaedic and Joint Implant Surgery Medical Group, Inc., 721 F.2d 654 (9th Cir.1983) to support their argument that federal courts do not have subject matter jurisdiction over an employer's failure to contribute required funds to an ERISA Plan. Appellees misconstrue this case. In Freeman, we merely held that a plaintiff employee who had never been a participant in an ERISA Plan did not have standing under ERISA. Id. at 656. We did not hold that a federal court lacks subject matter jurisdiction over a claim that an employer wrongfully failed to make required contributions to an ERISA Plan. Because Freeman does not limit § 1132(e)' § grant of jurisdiction, the district court had subject matter jurisdiction over Crotty's claim for benefits under the Plans.
 
 II. ERISA Standing
 
 16
 To sue for damages under ERISA, Crotty must be an ERISA "participant" or "beneficiary" who may be entitled to benefits under the Plans.[3] This requirement is set forth at 29 U.S.C. § 1132(a):
 
 
 17
 A civil action may be brought--
 
 
 18
 (1) by a participant or beneficiary-
 
 
 19
 ....
 
 
 20
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
 
 
 21
 The term "participant" means "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). "In order to establish that [a former employee] may become eligible for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117-18, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) (internal quotations omitted).[4]
 
 
 22
 Crotty claims that the Appellees failed to pay him benefits as required by the plain terms of the Plans. The amount of annual benefits Appellees were required to pay Crotty under the Plans depends, in part, on how Crotty's "annual compensation" is defined. Because Crotty was a plan participant, he would have standing to assert an ERISA claim based on Appellees' delinquent contribution.
 
 
 23
 Appellees argue that Crotty lost his ERISA standing during the course of the district court litigation because they paid Crotty all his vested benefits after he filed suit. Thus, Appellees contend that Crotty ceased being a participant in the Plans and lost his ERISA standing. The district court agreed, concluding that the "determination of standing, based upon whether the ERISA benefits have been paid to the participant, is not decided merely at the time the suit is filed but at any time during the pendency of the lawsuit."
 
 
 24
 This conclusion contradicts our decision in Nishimoto v. Federman-Bachrach & Assoc., 903 F.2d 709 (9th Cir.1990). In Nishimoto, an ERISA plaintiff filed an action in state court that was later removed by the defendants to federal court. The plaintiff filed a motion for remand that the district court denied. The plaintiff did not challenge the district court's denial of that motion by seeking an interlocutory appeal. Id. at 711-12. Six months after the state court complaint was filed, the defendants paid the plaintiff the vested benefits due to her under the benefit plan. Id. at 712. The district court granted summary judgment in favor of the defendants. Id.
 
 
 25
 The plaintiff appealed, citing Kuntz v. Reese, and argued that the district court did not have jurisdiction because she ceased to be a "participant" when the defendants paid her vested benefits in a lump sum after she commenced her ERISA suit. Nishimoto, 903 F.2d at 714. We disagreed.
 
 
 26
 At the time she filed suit, [the plaintiff] was a participant in the [plan] within the meaning of section 1002(7). She was a former employee who was eligible to receive benefits from the plan. Indeed, she received these benefits, in the lump sum payment that was distributed to her some six months after she filed suit. We find this timing to be critical.
 
 
 27
 Because the Kuntz plaintiffs had received all the benefits they were due under the plan before they filed suit, we noted that they were not "eligible to receive a benefit." If successful in their action, the Kuntz plaintiffs would have received damages, not benefits from the plan. In contrast, [plaintiff] had not received any benefits at the time she filed suit, and thus, if successful, could have recovered those benefits from the plan.
 
 
 28
 That [the plaintiff] "settled" this claim by accepting a lump sum payment during the course of litigation does not alter our analysis. Her receipt of all the benefits she was due under the plan indicates only that the ERISA claim might have become subject to dismissal at that point.
 
 
 29
 Id. at 714-15 (citations and footnote omitted).
 
 
 30
 In light of Nishimoto, it is clear that the district court erred in holding that an ERISA plaintiff who had standing at the time an ERISA lawsuit was filed loses standing by accepting payment of vested benefits during the litigation. See also Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 933 (9th Cir.1994) ("Whether a person is a plan participant must be decided as of the time of the filing of the lawsuit."); but see Crawford v. Lamantia, 34 F.3d 28, 32 (1st Cir.1994) (holding that an ERISA plaintiff who was a covered employee when he filed his lawsuit (and thus a "participant"), lost his "participant" status and ERISA standing when he ceased employment during the litigation).
 
 
 31
 The Appellees attempt to distinguish Nishimoto by arguing that Nishimoto measured standing "at the point of filing of the original complaint because determination of the issue at that point is required by removal doctrine."
 
 
 32
 The Appellees are mistaken. In Nishimoto, we evaluated the removal jurisdiction of the district court after the district court denied a remand motion and there was no interlocutory appeal pending. Nishimoto, 903 F.2d at 713. In such cases, the issue is whether "the federal court would have had original jurisdiction of the case at final judgment." Harris, 26 F.3d at 932-33 (internal quotation and citation omitted).
 
 
 33
 In addition, requiring an ERISA plaintiff to be a "participant" at all times throughout a lawsuit would have the curious effect of forcing plaintiffs to choose between a defendant's offer of paying a plaintiff's vested benefits during an ERISA lawsuit (and seeing his unrelated claims for relief under the ERISA statute extinguished), or maintaining the lawsuit at the expense of foregoing vested benefits during the litigation. See Nunez v. Monterey Peninsula Eng'g, 867 F.Supp. 895, 902 (N.D.Cal.1994) (recognizing the "Catch-22 situation").
 
 
 34
 If Appellees' position were correct, § 1132(a) would explicitly state that only participants could bring an ERISA action. Such a rule, however, would defeat the clear congressional intent behind the passage of ERISA.
 
 
 35
 The ERISA statute, 29 U.S.C. §§ 1001-1461, was enacted to ensure "that minimum standards be provided assuring the equitable character of [employee benefit] plans and their financial soundness," id., § 1001(a). To achieve these ends, Congress stated the following:
 
 
 36
 It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.
 
 
 37
 29 U.S.C. § 1001(b) (emphases added).
 
 
 38
 Several interests identified in § 1001(b) would be threatened by a rule that an ERISA plaintiff must be a "participant" at all stages of an ERISA action to maintain ERISA standing. First, such a rule would discourage "disclosure and reporting to participants," id. A plan fiduciary who did not want to comply with ERISA disclosure and reporting requirements could simply ignore the requirements and pay participants their vested benefits late, or not at all. If one of these participants later filed suit, the plan fiduciary could attempt to pay the participant his vested benefits. If the participant accepted those vested benefits, the plan fiduciary would escape the consequences of violating ERISA's disclosure and reporting requirements.
 
 
 39
 Second, such a rule would defeat ERISA's purpose of "providing for appropriate remedies, sanctions, and ready access to the Federal courts," id. It would force ERISA plaintiffs to choose between receiving their ERISA benefits immediately or maintaining their ERISA action. Those plaintiffs who felt compelled to accept their vested benefits immediately would lose the right to pursue compensatory damages or attorney's fees. They would then suffer both the financial burden of damages imposed by the plan administrator's wrongdoing and the costs of retaining an attorney, and they would only receive what they were entitled to all along; their vested benefits.
 
 
 40
 Third, such a rule does not provide an "appropriate " remedy or sanction under the ERISA statute, id. If a plan administrator fails to make the required contributions, a participant should receive statutory compensatory damages and attorneys' fees, in addition to his vested benefits. Whether the ERISA plaintiff has accepted his vested benefits after filing the lawsuit should not matter.
 
 
 41
 Finally, such a rule does not provide ready access to the federal courts. To the contrary, it puts a plaintiff out of court if he accepts vested benefits after filing an ERISA enforcement action.[5]
 
 
 42
 Accordingly, we hold that Crotty has ERISA standing because he was entitled to benefits under the Plans at the time he filed his complaint, regardless whether he later accepted his vested benefits during the course of his lawsuit.[6]
 
 III. Damages under Section 1132(c)
 
 43
 The Appellees do not dispute that they failed to provide Crotty with certain information, including summary plan descriptions, in violation of ERISA requirements. See § 1024(b)(1), (b)(3) (requiring administrator to automatically provide participants with certain information, including summary plan descriptions).
 
 
 44
 A plan administrator is subject to penalties under § 1132(c) for failing to provide certain requested information:
 
 
 45
 Any administrator [ ] who ... fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
 
 
 46
 Id. § 1132(c) (emphasis added).
 
 
 47
 ERISA requires Plan administrators to furnish each participant with a summary plan description within ninety days after an employee becomes a participant. Id. § 1024(b)(1). Because Cook failed to provide summary plan descriptions to Crotty after Crotty orally requested information about the Plans, Cook violated the plain terms of § 1132(c). See Davis v. Liberty Mut. Ins. Co., 871 F.2d 1134, 1138-39 (D.C.Cir.1989) (holding administrator liable for statutory penalties under § 1132(c) for failing to provide summary plan descriptions as required by § 1024(b)(1)).
 
 
 48
 The district court ruled, however, that Cook was not subject to statutory penalties under § 1132(c) because Crotty did not make a written request. The district court noted that certain sections of ERISA--ss 1024(b)(4) and 1025(a)--require that participants make written requests for plan information. The district court concluded that an ERISA plaintiff must make a written request for any information the participant desires before being eligible to sue for damages under § 1132(c).
 
 
 49
 The administrator of the plan was obligated to furnish Crotty with the summary plan description at specified times, without the need for any request by Crotty. 29 U.S.C. § 1024(b)(1). The administrator did not comply with this obligation. If Crotty wanted the administrator to furnish him with the summary plan description at a time other than those specified in the statute for automatic furnishing of the document, then he could make a written request under 29 U.S.C. § 1024(b)(4). Upon his making a written request, he would be entitled to a copy of the summary plan description and could be required to pay a reasonable charge. Id. The civil enforcement penalty provision says that the penalty is applicable if the administrator "refuses to comply with a request for any information [that the] administrator is required by the subchapter to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c).
 
 
 50
 The logical reading of these sections, taken together, is that if the participant requests something he was entitled to receive automatically, without any request, then the civil enforcement penalty provision applies without regard to whether the request was in writing. In the case at bar, Crotty was entitled to the summary plan description automatically, without any request, and it was not furnished to him. His request therefore did not have to be in writing for the civil enforcement penalty to apply.
 
 CONCLUSION
 
 51
 Crotty has ERISA standing because he was a "participant" who had a colorable claim to vested benefits under the Plans at the time he filed suit. Crotty also has a claim for statutory damages under § 1132(c).
 
 
 52
 We reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 Crotty also asserted a breach of contract claim for unpaid wages based on Arizona law. The district court declined to exercise supplemental jurisdiction over this claim when it granted summary judgment on Crotty's federal claims. Crotty does not appeal the district court's decision to decline supplemental jurisdiction over this claim
 
 
 [2]
 These amounts apparently correspond to Crotty's "W-2 earnings" for the 1991 and 1992 fiscal years
 
 
 [3]
 The litigation does not center on Suzanne Crotty's standing because her status depends on whether Crotty is indeed a "participant." The parties agree that Suzanne Crotty has standing as a "beneficiary" if Crotty has standing as a "participant." See 29 U.S.C. § 1002(8) (defining beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder"); § 1132(a) (stating that a civil action may be brought by a participant or beneficiary)
 
 
 [4]
 Even though Crotty seeks statutory damages and attorney's fees against Appellees, that alone will not establish ERISA standing. See Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.1986) (per curiam) (holding that plaintiffs had no standing-even though they sought statutory damages-where ERISA plaintiffs were not eligible to receive a benefit, and were not likely to become eligible to receive a benefit, at the time that they filed the suit). To have standing, Crotty must be seeking benefits under the Plans
 
 
 [5]
 Because Crotty has ERISA standing, we need not consider his alternative argument that he has ERISA standing based on a theory of equitable estoppel
 
 
 [6]
 In its summary judgment order, the district court concluded that Appellees paid Crotty's vested benefits under the Plans. It is unclear whether the district court decided the merits of the question whether Crotty received all of his benefits under the Plans. The district court may have intended that its holding on this point only go to the standing question and not to the merits of Crotty's claim for vested benefits. The district court will have an opportunity to address this ambiguity on remand
 The calculation of Crotty's vested benefits depends heavily on how one defines Crotty's "annual compensation" under the Plans. The Parties dispute how the Plans define Crotty's annual compensation. The versions of the Plans provided to this court by Crotty define "Annual Compensation" as "the total compensation payable to an Employee each year as regular salary or wages, overtime payments, bonus payments or other irregular payments." The Appellees' version of the Plans define "Annual Compensation" as "the W-2 earnings actually paid to an Employee during the fiscal year of the Employer ending with or within the fiscal year."
 To the extent that the district court concluded that the Appellees' version of the Plans was correct (and that Crotty received all his vested benefits) the district court should more clearly explain how it reached this result.