127 F.3d 1139
 21 Employee Benefits Cas. 1886, 97 Cal. Daily
Op. Serv. 8171,
97 Daily Journal D.A.R. 13,213,
Pens. Plan Guide (CCH) P 23938I
James F. SCHULTZ, Plaintiff-Appellant,
v.
PLM INTERNATIONAL, INC.; PLM International, Inc. Employee
Stock Ownership Plan; State Street Bank and Trust Company;
Alec Merriam; Robert Tidball; Stephen Peary; Alan Hirsch;
John Brogan, Defendants-Appellees.
 No. 96-16255.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 17, 1997.
Decided Oct. 23, 1997.
 
 R. Bradford Huss, Trucker Huss, San Francisco, California, for the plaintiff-appellant.
 Randall J. Sunshine, Liner, Yankelevitz & Sunshine, Los Angeles, California, for the defendants-appellees.
 Mark S. Flynn, Senior Appellate Attorney, and Judith D. Heimlich, United States Department of Labor, Washington, DC, for the amicus.
 Appeal from the United States District Court for the Northern District of California; Laughlin E. Waters, District Judge, Presiding. D.C. No. CV-95-02957-LEW.
 Before: ALDISERT,* CHOY, and THOMPSON, Circuit Judges.
 Opinion by Judge CHOY; Dissent by Judge ALDISERT.
 CHOY, Circuit Judge:
 
 
 1
 Plaintiff-appellant James F. Schultz ("Schultz") appeals the district court's Fed.R.Civ.P. 12(b)(1) dismissal of his Employee Retirement Income Security Act ("ERISA") claim against his former employer, PLM International, Inc. ("PLM").[1] In this appeal, Schultz makes two main arguments. First, he claims that the district court erred in concluding that he lacked standing to pursue his ERISA action because he did not maintain his status as a participant in PLM's Employee Stock Ownership Plan ("ESOP") throughout the duration of the litigation. Second, Schultz asserts that the district court erred in deciding that he lacked standing because he did not present a colorable claim for benefits. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the decision of the district court. We hold that because Schultz was a participant at the time that he filed his lawsuit, he had standing to maintain his ERISA action.
 
 Factual and Procedural Background
 
 2
 Schultz is a former employee of PLM. In 1989, PLM instituted an ESOP under ERISA. Participants in the ESOP accrued retirement benefits, which included shares of preferred stock in PLM. The preferred stock was purchased from PLM by the ESOP. To pay for the stock, the ESOP borrowed funds from PLM. PLM had obtained a bank loan to fund its loan to the ESOP. The ESOP paid $13.00 per share for the preferred stock in 1989. A Certificate of Designation ("Certificate") governed the preferred stock. The Certificate specified that the shares of preferred stock would automatically be converted in a one-to-one ratio to shares of common stock if the stock were transferred to a participant in the ESOP or to anyone other than a trustee of a PLM employee benefit plan.
 
 
 3
 The Board of PLM was authorized under the ESOP documents to terminate the ESOP at any time. The Board in fact decided to terminate the ESOP effective January, 1995. Each participant's interest in the amounts allocated to his or her individual account became vested as of the date of termination. When the ESOP ended, the shares of preferred stock that had been credited to each participant's account were automatically converted into shares of common stock in a one-to-one ratio and were distributed to the ESOP participants. At the time the ESOP was terminated, the market value of the preferred stock was $13.72 per share, while the market value of the common stock was $2.75 per share. On January 12, 1996, the ESOP distributed the remaining plan assets to the ESOP participants.
 
 
 4
 Schultz now claims that PLM breached its fiduciary duty by 1) causing the ESOP to purchase the preferred stock subject to the conversion feature and at a price greater than its fair market value; 2) terminating the ESOP without obtaining a fairness opinion, and in a manner that diminished the value of the preferred stock; and 3) causing the ESOP to sell or exchange the preferred stock for less than its fair market value upon termination of the ESOP. Schultz also asserts that PLM engaged in the following ERISA-prohibited transactions with a party in interest: 1) causing the preferred stock to be purchased by the ESOP from PLM at a price greater than the stock's fair market value at the time of purchase; 2) directing State Street, the ESOP's trustee, to reimburse PLM for expenses incurred in PLM's capacity as settlor; and 3) causing the sale or exchange of the preferred stock at a price less than its fair market value.[2]
 
 
 5
 PLM moved to dismiss for lack of federal subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The district court granted the motion, ruling that Schultz lacked standing to sue under ERISA because his suit was for damages as opposed to benefits, and because Schultz was not a participant under ERISA due to the fact that he had received a final disbursement of the benefits that he was due under the ESOP.
 
 Standard of Review
 
 6
 The district court's conclusion that it lacks subject matter jurisdiction is reviewed de novo. Wilson v. A.H. Belo Corp., 87 F.3d 393, 396 (9th Cir.1996). This court reviews the district court's findings of fact relevant to its determination of subject matter jurisdiction for clear error. Id.
 
 Analysis
 
 7
 A "participant" in a plan covered by ERISA may bring a civil action in order to recover plan benefits, enforce rights under the plan, or clarify rights to future benefits under the plan. 29 U.S.C. § 1132(a)(1)(B). A participant may also bring suit "for appropriate relief under section 1109 of this title [entitled "Liability for breach of fiduciary duty"]."[3] 29 U.S.C. § 1132(a)(2). Additionally, a participant may bring an ERISA action "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3).
 
 
 8
 For ERISA purposes, a participant is "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type[4] from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). Schultz is no longer employed by PLM and the ESOP is now defunct; thus, Schultz is not currently eligible for benefits. However, Schultz claims that participant status should be determined as of the time that the lawsuit was filed, and that it is not necessary to maintain participant status throughout the litigation. Schultz filed suit in August, 1995. In January of 1996, Schultz received a payment from the ESOP that he contends was an additional distribution of benefits. Thus, Schultz argues that because at the time of the filing of the suit he was a former employee who was eligible for benefits, he was a plan participant at that time and hence may maintain an action under ERISA.
 
 
 9
 In response, PLM contends that participant status must be maintained throughout an action for a claimant to have standing. According to PLM's argument, upon receipt of the final payment of vested benefits in January Schultz ceased to be a participant in the ESOP and hence lost his participant status and likewise his standing to sue.
 
 
 10
 In Crotty v. Cook, 121 F.3d 541 (9th Cir.1997), we addressed the question of whether a plaintiff needs to maintain participant status throughout ERISA litigation in order to have standing. We held that a plaintiff who "was entitled to benefits under the Plan[ ] at the time he filed his complaint" has standing under ERISA, "regardless of whether he later accepted his vested benefits during the course of his lawsuit." Id. at 547. In so doing, we observed that a contrary rule would be inconsistent with ERISA's policy of providing claimants with ready access to the federal courts, and would also defeat other ERISA goals. Id. at 546. We noted that, if a plaintiff were required to be a participant at all times throughout the action, the plaintiff would be forced to "choose between a defendant's offer of paying a plaintiff's vested benefits during an ERISA lawsuit (and seeing his unrelated claims for relief under the ERISA statute extinguished), or maintaining the lawsuit at the expense of foregoing vested benefits during the litigation." Id.
 
 
 11
 PLM claims that the January payment was a "proportionate share of the previously unallocated assets remaining in the ESOP after satisfaction of all plan liabilities" and was paid "in addition to Plaintiff's vested benefit." Thus, according to PLM, Schultz's entire vested benefit had been distributed before Schultz filed his lawsuit.
 
 
 12
 The payment made to Schultz in January of 1996 was a distribution of benefits to which Schultz was entitled at the time he filed his lawsuit. Under Crotty, then, the fact that Schultz received those benefits during the pendency of the litigation would not serve as a bar to his suit. Rather, because Schultz was eligible to receive a benefit at the time he filed suit in August of 1995, he was a participant and had standing to maintain his suit.[5]
 
 
 13
 We need not address Schultz's assertion that he had a colorable claim that he would succeed in a suit for benefits.[6] Under ERISA, a participant is an employee or former employee 1) who is eligible to receive a benefit of any type from the plan, or 2) who may become eligible to receive a benefit of any type from the plan. 29 U.S.C. § 1002(7) (emphasis added). If an individual is not eligible for benefits, i.e., if the individual received a full distribution of benefits before filing suit, the individual may still be able to bring an action if the individual may be eligible to receive benefits in the future. To see if a claimant may become eligible to receive benefits, we would look to whether the claimant has a colorable claim of success in a suit for benefits. Firestone, 489 U.S. at 117-18, 109 S.Ct. at 957-58. We need not engage in the Firestone analysis because, while Schultz's action appears to primarily be for damages rather than for benefits, Schultz was a participant at the time that the suit was filed. Therefore, under Crotty, he has standing to maintain his ERISA action even if his suit was not for benefits, as long as it was one of the causes of action specified in 29 U.S.C. § 1132.
 
 
 14
 Schultz has notified the court of his intention to seek attorney's fees for this appeal. PLM opposes Schultz's request for fees, and will itself seek attorney's fees for this appeal.
 
 
 15
 Pursuant to 29 U.S.C. § 1132(g)(1), in any action brought by an ERISA "participant, beneficiary, or fiduciary," the court has the discretion to grant "a reasonable attorney's fee and costs of action to either party." For attorney's fees to be granted, the suit must have been brought by one of the specified parties.
 
 
 16
 Because we conclude that Schultz was a participant when he filed suit, we have the discretion to grant attorney's fees to either party. The following five factors should be considered in deciding whether a grant of attorney's fees is warranted:(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 17
 Corder v. Howard Johnson & Co., 53 F.3d 225, 231 (9th Cir.1994) (citing Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980)). Weighing the five factors, we conclude that each party should bear its own attorney's fees.
 
 Conclusion
 
 18
 Under Crotty, the January 1996 distribution of vested benefits to Schultz did not divest him of standing to maintain his ERISA action. We therefore reverse the decision of the district court, and remand for further proceedings in accordance with this opinion.
 
 
 19
 REVERSED and REMANDED.
 
 ALDISERT, Circuit Judge, dissenting:
 
 20
 I disagree with the selected major premise of the basic categorical syllogism that undergirds the majority's view:
 
 
 21
 The payment made to Schultz in January of 1996 was a distribution of benefits to which Schultz was entitled at the time he filed his lawsuit. Under Crotty, then, the fact that Schultz received those benefits during the pendency of the litigation would not serve as a bar to his suit. Rather, because Schultz was eligible to receive a benefit at the time he filed suit in August of 1995, he was a participant and had standing to maintain his suit.
 
 
 22
 Maj. Op. at 1142 (emphasis added).
 
 
 23
 For the conclusion to stand the content of the premises must be true.[1] Here the major premise of Appellant's argument, which was accepted by the majority-that the January 1996 payment to Schultz was a "benefit" to which he was entitled at the time he filed his lawsuit-is not true. What he received after filing suit was not "benefits", but mere "residual assets." Borst v. Chevron Corp., 36 F.3d 1308, 1311 (5th Cir.1994). The distinction between "benefits" and "residual assets" set forth in Borst has been accepted by this court. Jacobson v. Hughes Aircraft Co., 105 F.3d 1288, 1294 (9th Cir.1997).
 
 I.
 
 24
 A brief reference to the facts in this case is now necessary in order to apply the foregoing precepts. PLM borrowed over $63 million in 1989 and lent it to the ESOP, which in turn purchased PLM stock. The ESOP began to repay the loan to PLM with PLM's contributions to the ESOP or dividends on the stock. As the loan was repaid, shares of stock were allocated to a trust fund made up of the individual accounts of the participants. The participants gained entitlement to the benefits in their accounts by the ESOP's terms, which are subject to the minimum standards of ERISA. Each participant's "Account" was "his or her interest under the Plan and in the Trust Fund." ERISA defines an "accrued benefit" as "the balance of the individual's account." 29 U.S.C. § 1002(23)(B).
 
 
 25
 When the ESOP terminated in January 1995, it distributed to Schultz the stock and cash that had been allocated to his individual account, which became vested as of the date of termination. These were his "benefits." 29 U.S.C. § 1002(34). The unallocated assets in the ESOP were returned to PLM, canceling the ESOP's debt to PLM. The remaining assets were used, as contemplated by the ESOP's terms, for administrative "wind-up" activities. In January 1996, after PLM determined that the actual administrative costs were less than originally contemplated, it distributed the remaining $45,000 in unallocated assets to the former participants.
 
 
 26
 Under ERISA, these residual assets were not "accrued benefits" because they were never allocated to the individual accounts of participants. In fact, by the ESOP's own terms:
 
 
 27
 As of the date of termination, the shares and cash, if any, credited to the Account of each Member ... shall be paid in kind in a lump sum as soon as practicable from the Trust to each Member.... Any amounts remaining unallocated in a suspense account ... shall, after application to the extent necessary to satisfy the outstanding balance on any ESOP Loan, be returned to the Company specified by PLM.
 
 
 28
 ER 15, Ex. C § 17.4. The ESOP did not provide for a further allocation; rather, Schultz's allocated benefits vested on termination, in January 1995.
 
 
 29
 ERISA also provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). It is because of this rule that PLM distributed the residual assets to Schultz.
 
 II.
 
 30
 Case law that distinguishes between "benefits" and "residual assets" arises in the context of defined benefit plans that allow employers to recover residual assets. The PLM ESOP was not a defined benefit plan; however, these cases are instructive in determining if the PLM ESOP's residual assets were benefits. Notwithstanding the majority's contention that a Firestone analysis is unnecessary, to have standing under ERISA Schultz must have been a "participant" upon filing suit. 29 U.S.C. § 1132(a). This means, as a former employee, he must "have [had] 'a colorable claim' to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) (quoting Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.1986)) (emphasis added).
 
 
 31
 To this end, Borst is instructive. In that case former participants of a plan sued their employer to recover the plan's residual assets, which reverted to the company after all benefits and expenses were paid. Like the PLM ESOP, the plan was subject to ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1). But because it was a defined benefit plan it was also subject to § 1344(d)(1), which is an exception to the general rule that plan assets can never inure to the benefit of any employer. Section 1344(d)(1) provides that residual assets of defined benefit plans may be distributed to the employer, not the participants, if certain conditions are met. The participants in Borst were fully vested in their accrued plan benefits, as was Schultz when he filed his complaint. The court held that the participants were entitled only to those benefits, not to the surplus, because § 1344(d)(1) was satisfied by implication. 36 F.3d at 1315-16. The plan was like a "gratuitous trust," because the employer was the sole contributor to the plan. Id.
 
 
 32
 Likewise, PLM was the sole contributor to the ESOP. Unlike the employer in Borst, PLM is not arguing that it should retain the assets; pursuant to ERISA's anti-inurement provision, it distributed the residual assets to all former participants in the benefit plan. The relevant rule of law, however, is clear: There is a basic distinction between "benefits" and "residual assets." The mere fact of distribution does not change the character of the assets, and does not change the status of a non-participant.
 
 
 33
 We have previously adopted the reasoning of Borst as it applies to the narrow question before this court. In Jacobson, which analyzed whether a plan's residual assets were benefits to which participants were entitled, we recognized a distinction between a plan funded partially by employees or solely by the employer: "It is clear that Congress intended to distinguish between [the two, and] to ignore the distinction ... would eviscerate the protections provided to employees under ERISA with respect to their employee contributions." 105 F.3d at 1294. We quoted Borst: "An entirely employer funded defined benefit plan pension trust is therefore more akin to a gratuitous trust so far as concerns surplus assets.... This principle has been looked to in holding an employer entitled to surplus assets on termination of an employer funded defined benefit pension plan." Id. (quoting Borst, 36 F.3d at 1315).
 
 
 34
 It unerringly follows from these concepts that the ESOP's residual assets, having been solely funded by PLM and never allocated to individual accounts, were not benefits. In defined benefit single-employer plans, this distinction is crucial in determining whether an employer may keep its plan's residual assets. Malia v. General Elec. Co., 23 F.3d 828, 831-832 (3rd Cir.1994) (ERISA "demonstrates clearly that 'benefits' are elements that are conceptualized and treated differently in a plan termination than are the 'assets' of that plan.")
 
 
 35
 This analogy to defined benefit plans is helpful in order to characterize the 1996 distribution. It was not benefits.
 
 III.
 
 36
 The majority state as their major premise that the residual assets distributed to Schultz in January 1996 were "benefits." The majority's conclusion, standing on the weight of this premise, is that Schultz was a participant when he filed suit. However, the content of the major premise is not true; it is contrary to the law of this court. Because the premise is faulty, the conclusion is likewise faulty.
 
 
 37
 Schultz received every cent of the vested benefits in his account prior to his filing suit. When the ESOP made a further distribution in January 1996, Schultz did not receive "benefits." Instead, he received a portion of the "residual assets," something entirely different from benefits. Accordingly, he was not a participant under the plan when he filed suit in August 1995. Not being a participant, he lacked standing to pursue his claim in federal court under the rubric of ERISA. The retroactive effect of Crotty was not triggered.
 
 
 38
 I would affirm the judgment of the district court. Accordingly, I dissent.
 
 
 
 *
 The Honorable Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 Schultz also named PLM International, Inc. Employee Stock Ownership Plan; State Street Bank and Trust Company; Alec Merriam; Robert Tidball; Stephen Peary; Alan Hirsch; and John Brogan as defendants in his action
 
 
 [2]
 Schultz also alleges that PLM interfered with rights protected under ERISA by "interfering with Plaintiff's right to seek comment from the Department of Labor with respect to PLM's request for a determination letter from the Internal Revenue Service with respect to the amendments to the ESOP and in discriminating against Plaintiff subsequent to Plaintiff's attempt to so seek comment from the Department of Labor."
 
 
 [3]
 The text of 29 U.S.C. § 1109 reads as follows, in relevant part:
 (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.
 
 
 [4]
 We have held that a constructive trust to recover ill-gotten gains qualifies as a 'benefit of any type' under ERISA. Amalgamated Clothing & Textile Workers Union v. Murdock, 861 F.2d 1406, 1419 (9th Cir.1988)
 
 
 [5]
 Schultz's suit also must be premised on one of the grounds specified in 29 U.S.C. § 1132 for him to be able to sue under ERISA
 
 
 [6]
 "In order to establish that [a former employee] may become eligible for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117-18, 109 S.Ct. 948, 957-58, 103 L.Ed.2d 80 (1989) (internal quotations omitted)
 
 
 [1]
 "The validity of a syllogism and the soundness of the argument's structure deal only with the relations between the premises. Validity deals only with form. It has absolutely nothing to do with content. Arguments, therefore, may be logically valid, yet absolutely nonsensical. Assuming valid form, the essence of argument must always be a search for the truth or falsity of the premises.... Once this determination is made in constructing the premise in a deductive syllogism, however, we do not say that the conclusion probably will follow; the conclusion must follow." Ruggero J. Aldisert, Logic for Lawyers: A Guide to Clear Legal Thinking 68-69 (3d ed.1997)