**William FREITAG, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., Defendant.**

Civ. A. No. 88–0269–A.

United States District Court, E.D. Virginia, Alexandria Division.

Nov. 16, 1988.

Frances E. Kanterman (Lead Counsel), Baltimore, Md., R. Michael Smith, Katheryn D. Zupan, Tysons Corner, Va., for plaintiff.

Joe O. Wiggs, Alexandria, Va., Sue Barnett Bohringer (Lead Counsel), New York City, for defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the court upon the Complaint of William Freitag ("Freitag") alleging that the defendant, Pan American World Airways, Inc. ("Pan Am") violated certain provisions of the Employee Retirement Income Security Act ("ERISA") and the Age Discrimination in Employment Act ("ADEA").

In Count I of the Complaint Freitag alleges that Pan Am laid him off because of his age in violation of 29 U.S.C. § 623 of ADEA. In Count II Freitag alleges that Pan Am's actions in laying him off were for the purpose of interfering with his receipt of benefits and attainment of rights under Pan Am's employee benefit plans in violation 29 U.S.C. § 1140 of ERISA. In Count IV Freitag alleges that Pan Am violated 29 U.S.C. § 1132(c) of ERISA by failing to timely provide him with information which he had requested concerning Pan Am's employee benefit plans.[1]

As to Count I, on September 29, 1988 a jury returned a verdict for the defendant, Pan Am, finding that Pan Am did not discharge plaintiff, Freitag, in violation of 29 U.S.C. § 623 of ADEA.

As to Count II, Freitag requested that the issue be submitted to the jury along with Count I. The court, however, ruled that since any relief under 29 U.S.C. § 1140 is equitable in nature it is a question for the court and not one properly presented to a jury.[2]

As to Count IV, any determination to impose penalties under 29 U.S.C. § 1132(c) is within "the court's discretion" and accordingly this issue was also not submitted to the jury.

## I

## FACTS

The defendant, Pan Am, is an international air carrier organized under the laws of the state of New York, and does business in Virginia at Dulles International Airport ("Dulles"). (Complaint, Answer).

Pan Am has been suffering tremendous financial loses since 1980 and is continually struggling in an effort to reverse this trend. In order to stay in business, Pan Am has been forced to sell many of its assets, including its entire pacific division and associated hotels.

Vice–President for Sales, Thor Johnson, as an executive with Pan Am, was in the position of having to attempt to cut company costs in order to assist in correcting Pan Am's poor financial standing. Mr. Johnson was of the opinion that at Dulles there were too many management employees in relation to Pan Am flights. Plaintiff, Freitag, held a management position known as Ramp Operations Supervisor ("ROS") at Dulles. Mr. Johnson made the decision to abolish the ROS management positions at Dulles in an effort to reduce costs. (Testimony of Johnson). As a result plaintiff, Freitag's, employment was terminated.

William Freitag, is fifty-two and was employed by Pan Am from February, 1969 until November 15, 1987. Freitag received a termination letter dated October 31, 1987 informing him that as of November 15,

---

1. On September 26, 1988, plaintiff dismissed with prejudice Counts III and V of his Complaint.

2. There is a split of authority as to whether a party is entitled to a jury trial under 29 U.S.C. § 1132(a)(1)(B). *See* Annotation, *Plaintiff's Right to Jury Trial in Civil Action Under § 502(a)(1)(B) of Employee Retirement Income Security Act (29 USCS § 1132(a)(1)(B)),* 56 A.L. R.Fed. 880 (1982). Following the court's decision to try the case non-jury, plaintiff's counsel acquiesced in the non-jury submission.

1987 his employment with Pan Am as a ROS was terminated. (Plaintiff's Testimony; Plaintiff's Exh. # 47).

When Freitag received the letter of termination he went to New York to see Mr. Johnson for the purpose of trying to obtain another position with Pan Am thus enabling him to stay on with the airline. Freitag was unable to meet with Mr. Johnson but did meet with another Pan Am executive, John Bergamo. Mr. Bergamo in fact offered plaintiff a job as a supervisor in the departure control position at Kennedy International Airport in New York. Plaintiff did not accept the offered position because it would have required him to relocate to New York.

As an employee with Pan Am for more than eighteen-years Mr. Freitag was entitled to certain benefits pursuant to Pan Am's severance pay and vacation pay plans. Accordingly, at the time of his layoff, Freitag received severance pay and payments for accrued vacation leave both of which were calculated on the basis of calendar days. Before providing Freitag with his benefits Pan Am made a $1,000.00 deduction from his accrued vacation leave. (Testimony of Plaintiff).

Freitag was concerned about the accuracy of the benefits provided him so, on December 11, 1987, Freitag requested in writing from Pan Am documents regarding his accrual of benefits under Pan Am's severance pay and vacation pay plans. At this time Freitag also requested an explanation as to how Pan Am computed the amounts of severance and vacation pay that he received when he was laid off. (Plaintiff's Exh. # 231).

By Letter of January 14, 1988, Pan Am informed Freitag that they refused to provide him with the documents he had requested. Freitag was informed that the documents he had requested were confidential and/or irrelevant and therefore he was not entitled to them. However, Pan Am assured Freitag that he was terminated for economic reasons and not because of his age. (Plaintiff's Exh. # 232).

In the January 14th letter, Pan Am also told Freitag that if he would provide Pan Am with additional details regarding his questions concerning his severance and vacation pay benefits they would look into the matter. (Plaintiff's Exh. # 232).

On January 21, 1988, Freitag's counsel submitted to Pan Am additional information regarding plaintiff's concerns about his severance and vacation pay benefits. (Plaintiff's Exh. # 233). In addition, Freitag's counsel requested Pan Am, to explain the $1,000 deduction from Freitag's accrued vacation pay and to explain why his vacation pay and severance pay were both calculated on the basis of calendar days rather than work days. Freitag's counsel also advised Pan Am that Freitag had cashed the vacation pay and severance checks, however the checks were accepted only as partial payment and that no waiver of rights was intended or effectuated. Freitag's counsel also expressed his displeasure with Pan Am's unwillingness to discuss Freitag's age discrimination claim. (Plaintiff's Exh. # 233).

In response to the January 21, 1988 letter Pan Am, on May 19, 1988, provided Freitag with the benefit plans information he had requested. (Plaintiff's Exh. # 234).

With regard to plaintiff's concerns as to the accuracy of the benefits he received upon his termination; pre-trial discovery revealed that the vacation pay and severance pay were both properly calculated and that the $1,000.00 was properly deducted from Freitag's accrued vacation pay. (Plaintiff's Exh. # 282).

Mr. James Connolly, the System Director of Pension Planning and Administration for Pan Am testified that, because of Pan Am's poor financial status, the Planning and Pension Administration Office and its Employee Service Centers receive a voluminous amount of requests for information. Mr. Connolly pointed out that the average age of the employees at Pan Am has gone up adding to the number of requests Pan Am receives regarding employee benefits. Additionally, Mr. Connolly stated that retirements within the company have been in excess of what Pan Am had projected thus increasing the strain on his office. Mr. Connolly testified that due to the limited

size of his staff and the extreme number of requests for information, his office has great difficulty in promptly responding. Mr. Connolly emphasized that it can take two to three months to respond to an individual inquiry due to the many requests his office receives. (Testimony of Connolly).

Connolly further testified that because of financial difficulties Pan Am was forced, in 1983, to freeze its defined benefit plans. With regard to the plaintiff, Connolly testified that Freitag was 100-percent vested and that at attaining the age of 55 Freitag will be able to draw down a terminated vested pension benefit.

## II

■ In Count II Plaintiff alleges that Pan Am's action in laying him off was for the purpose of interfering with his receipt of benefits and attainment of rights under Pan Am's employee benefit plans in violation of 29 U.S.C. § 1140 of ERISA.

Title 29 U.S.C. § 1140 states in pertinent part:

> It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

The court finds that in light of the evidence presented at trial plaintiff was terminated from his employment for economic reasons and not because of any discriminatory motive of age or for the purpose of preventing him from obtaining his benefits. *See Economu v. Borg–Warner Corp.*, 662 F.Supp. 1047, 1051 (D.Conn.1986), *aff'd* 824 F.2d 181 (2d Cir.1987). Accordingly, Count II is dismissed.

Turning now to Count IV, plaintiff requests penalties be imposed upon Pan Am for its failure to comply with the reporting requirements of ERISA. The Employee Retirement Income Security Act requires that upon request of the participant or beneficiary, the plan administrator must furnish that participant with certain information:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated....

29 U.S.C. § 1024(b)(4). (Plaintiff's Exh. 3, 4, 5, 136).

ERISA authorizes the court to impose a statutory penalty upon a plan administrator's failure or refusal to comply within thirty days with a Section 1024(b)(4) request for information:

> (c) Administrator's refusal to supply requested information
>
> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c).

Pan Am argues that their employee severance and vacation pay plans do not come within these reporting and disclosure provisions.

■ The court first addresses the question of whether severance and vacation pay plans are within the embed of ERISA.

The definitions section to ERISA provides guidance as to the applicability of the reporting and penalty provisions to Pan Am's severance and vacation pay plans. 29 U.S.C. § 1002(1) states in part:

The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... unemployment, or vacation benefits ...

In *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985), *aff'd* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559, *cert. denied* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986) the Fourth Circuit stated:

Severance pay plans are also within the definition of 29 U.S.C. § 1002(1)(B), which refers to 29 U.S.C. § 186(c) for illustration of the types of benefits characterized as employee welfare benefit plans. Section 186(c)(6) describes "pooled vacation, holiday, severance or similar benefits"

*Id.* at 1145.

The court finds little support for Pan Am's argument and thus accordingly finds that the severance and vacation pay plans are included within the scope of ERISA. *See* 29 U.S.C. § 1002(1), (2), and (3). *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985), *aff'd* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559, *cert. denied* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986).

■ Plaintiff, Freitag, first requested information under ERISA on December 11, 1987. Pan Am did not respond to the plaintiff's information request and did not provide plaintiff with the requested plan documentation until May 19, 1988, after plaintiff had made a discovery request. (Plaintiff's Exh. # 234).

Plaintiff obtained the benefit information from pretrial discovery and not within the thirty days allotted by ERISA. In *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134 (3rd. Cir.1987), the court in discussing 29 U.S.C. § 1132(c), another employer penalty provision for non-compliance with reporting and disclosure require-

ments, pointed out that the district courts have discretion whether to award damages stating:

For example, if the employee's claim for benefits is not colorable, and if the employer displayed no bad faith in responding to the claim—taking somewhat too long to respond to it, for instance, but not ignoring it entirely—then the district court would be well within its discretion in setting damages at $0.

*Id.* at 153.

Pan Am was slow to respond to plaintiff's request for benefit information. The reason for being slow to respond was the overwhelming requests by employees for benefit information triggered by Pan Am's financial condition. The court does not find Pan Am's actions to be in bad faith. The court also does not find that two to three months to respond to a request is unreasonable in light of all the circumstances. The court, however, chooses to hold defendant, Pan Am, to the testimony of Mr. Connolly and find that under the circumstances Pan Am should have responded to plaintiff's request within sixty days. Mr. Freitag made his request on December 11, 1987, therefore Pan Am should have responded by February 9, 1988, sixty days later. The response of May 19, 1988, is one hundred days beyond the appropriate response time. Accordingly, the court in its discretion will apply the maximum penalty of $100 dollars a day and award plaintiff the sum of $10,000 in damages.

An appropriate Order shall issue.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is accordingly ORDERED:

(1) that Judgment be, and it hereby is, ENTERED in favor of the defendant, Pan American World Airways, Inc., and against the plaintiff, William Freitag, on Count II of the plaintiff's Complaint. Count II of the plaintiff's Complaint is DISMISSED with prejudice.

(2) that Judgment be, and it hereby is, ENTERED in favor of the plaintiff, William Freitag, and against the defendant, Pan American World Airways, Inc., on Count IV in the amount of $10,000.00, plus costs and interest.