68 F.3d 460
 19 Employee Benefits Cas. 2227
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Elma A. GLOCKER, Personal Representative of Edwin L.
Glocker, Plaintiff-Appellant,
v.
W.R. GRACE & COMPANY; AETNA LIFE INSURANCE COMPANY,
Defendants-Appellees.
 No. 94-1789.
 United States Court of Appeals, Fourth Circuit.
 Argued: July 12, 1995.
Decided: October 12, 1995.
 
 ARGUED: Peter Baldwin Turney, Frank Edward Turney, Law Offices of Frank E. Turney, Baltimore, MD, for Appellant. Jeffrey Peabody Ayres, Venable, Baetjer & Howard, Baltimore, MD, for Appellees. ON BRIEF: Todd J. Horn, Venable, Baetjer & Howard, Baltimore, MD, for Appellees.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Elma A. Glocker appeals from the district court's award of summary judgment to W.R. Grace & Company and Aetna Insurance Company (collectively, Grace) on her claims for failure to pay medical benefits and for a civil penalty. We affirm the denial of benefits, reverse the district court's refusal to award a civil penalty, and remand for assessment of a reasonable penalty.
 
 
 2
 * The facts pertinent to this appeal are set forth in our opinion in Glocker v. W.R. Grace & Co., 974 F.2d 540, 542 (4th Cir.1992) (Glocker I ), and we summarize them here.
 
 
 3
 Edwin Glocker retired from Grace in 1973 and was entitled to medical benefits under a Medicare Supplemented Benefit-I Plan, which, taken together with a Comprehensive Medical Expense Benefits-VI Plan, constitute Grace's Plan. Mr. Glocker was hospitalized in 1988 with advanced prostate cancer. While in the hospital, he employed several private-duty nurses. His physician, Dr. Schirmer, recommended the employment of nurses to ensure that Mr. Glocker not choke on his saliva or phlegm, remove intravenous tubes, or increase the risk of pneumonia by lying on his back. The nurses were also to notice any instances of apnea and to monitor his supply of oxygen. Dr. Schirmer did not think the staff nurses could adequately guard against these risks because of their workload.
 
 
 4
 After Mr. Glocker died, Mrs. Glocker filed a claim seeking reimbursement for the cost of the private-duty nurses. Grace denied the request on the basis that the nurses provided custodial care, which was not covered by the Plan.
 
 
 5
 Mrs. Glocker sued Grace, charging that it had improperly denied benefits and that it had violated the disclosure provisions of ERISA by failing to supply her with portions of the Plan in a timely manner. The district court granted summary judgment to Grace, finding that it had not abused its discretion in denying benefits and that civil penalties were not appropriate.
 
 
 6
 In Glocker I we vacated the district court's order and directed the court to consider the denial of benefits de novo, rather than under an abuse of discretion standard. We also directed the court to reconsider Mrs. Glocker's claim for civil penalties. 974 F.2d at 544.
 
 
 7
 Reviewing Grace's denial of benefits de novo on remand, the district court again granted summary judgment to Grace, finding that the provisions of the Plan did not cover the care for which expenses were incurred. The court also denied Mrs. Glocker's claim for civil penalties, finding that any delay in producing documents did not prejudice her.
 
 II
 
 8
 The general provisions of the Plan exclude from coverage expenses for custodial nursing care. Because Mr. Glocker was eligible for Medicare, he received benefits under Grace's Medicare Supplement Benefits-I plan. Glocker I, 974 F.2d at 542. That plan states: "No Medicare Supplement Benefits are provided under the plan for charges for custodial care." Custodial care is defined as follows:
 
 
 9
 Custodial care is care which consists of services and supplies, including board and room and other institutional services, furnished to an individual primarily to assist him in activities of daily living, whether or not he is disabled. These services and supplies are custodial care regardless of the practitioner or provider who prescribed, recommended or performed them.
 
 
 10
 When board and room and skilled nursing services must be combined with other necessary therapeutic services and supplies in accordance with generally accepted medical standards to establish a program of medical treatment, they will not be considered custodial care. However, to meet this test they must be provided to an individual in an institution for which coverage is available under the plan and the program of medical treatment must be one which can reasonably be expected to substantially improve the individual's medical condition.
 
 
 11
 After examining the depositions of Dr. Schirmer and the privateduty nurses, the court found that the primary function of the nurses was to assist Mr. Glocker in the tasks of everyday living by giving him baths, helping him brush his teeth, performing motion exercises with him, shaving his face when he could not, and so forth. The court concluded that the care provided was custodial in nature.
 
 
 12
 Next, the court found that the custodial care was not part of a program of treatment reasonably expected to substantially improve Mr. Glocker's condition. The court emphasized Dr. Schirmer's testimony that, because of the advanced stage of his cancer, no treatment could have improved Mr. Glocker's condition by the time he was admitted to the hospital. Relying on Dr. Schirmer's testimony, the court rejected Mrs. Glocker's argument that the term "substantial improvement" should be interpreted to include intermediate improvements such as diminution in pain.
 
 
 13
 The nurses who cared for Mr. Glocker testified that their primary function was to provide companionship and daily assistance to Mr. Glocker during his stay in the hospital. Dr. Schirmer, who was Mr. Glocker's treating physician, stated repeatedly that Mr. Glocker's condition could not be "substantially improved," only moderated. We agree with the district court's analysis and affirm its judgment on this issue.
 
 III
 
 14
 Under ERISA, a plan administrator must "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description ... contract, or other instruments under which the plan is established or operated." 29 U.S.C. Sec. 1024(b)(4). Failure to comply with such a request within 30 days may, in the court's discretion, be punished by sanctions of up to $100 per day of delay. 29 U.S.C. Sec. 1132(c)(1).
 
 
 15
 As early as June 19, 1989, Mrs. Glocker's attorney asked Grace in writing to supply "the whole policy." Sixteen repeated requests followed in subsequent months. The correspondence indicates rising levels of frustration on both sides; apparently, Grace had difficulty gathering all the pertinent documents from its voluminous files without undertaking an extensive process of review. On November 5, 1990, after Mrs. Glocker's attorney had filed a motion to compel and amended the complaint to include a count for civil penalties under ERISA, Grace provided the requested documents.
 
 
 16
 In declining to impose penalties, the district court placed great emphasis on its finding that Mrs. Glocker suffered no prejudice from Grace's delay. The district court relied primarily on Sejman v. Warner-Lambert Co., 889 F.2d 1346 (4th Cir.1989). In that case, which dealt with severance pay, the district court found that WarnerLambert had circulated copies of its severance policy to its employees and that they were well aware of its existence. We affirmed the district court's denial of penalties, holding that the employees suffered "no substantive harm." 889 F.2d at 1350. Here, in contrast, Grace did not circulate all relevant parts of the Plan to beneficiaries, nor was Mrs. Glocker aware of them.
 
 
 17
 The district court also cited Kelly v. Chase Manhattan Bank, 717 F.Supp. 227, 233 (S.D.N.Y.1989), which involved an age discrimination claim. In that case, the district court noted that the complaint failed to allege any harm caused by a delay in furnishing a profit sharing plan and that the plaintiff's argument about harm was speculative. Insofar as the district court's comments in Kelly can be read to preclude absolutely a penalty if no prejudice is shown, we decline to follow it because such a bar is contrary to more recent, better-reasoned cases.
 
 
 18
 While prejudice is a factor to be considered, it is not an absolute requirement for imposing penalties under ERISA. In Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494-95 (11th Cir.1993), the court awarded penalties for an unexplained twelve-month delay by an employer. The court stated that a showing of prejudice to the claimant was not necessary, noting that the penalty provision of 29 U.S.C. Sec. 1132(c) is unrelated to any injury suffered by the plan participant. Accord Moothart v. Bell, 21 F.3d 1499, 1506 (10th Cir.1994); Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1148 (3d Cir.1993); Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 588 (1st Cir.1993).
 
 
 19
 Where prejudice consists mainly of aggravation and frustration for the requesting party, courts have awarded penalties in the range of $10 to $30 per day. See, e.g., Moothart, 21 F.3d at 1506 (affirming district court's award of $30 per day where no substantial prejudice was shown); Daniel v. Eaton Corp., 839 F.2d 263, 268 (6th Cir.1988) (affirming district court's award of $25 per day where delay resulted from neglect or misfeasance and no prejudice was shown); Paris v. F. Korbel & Brothers, Inc., 751 F.Supp. 834, 839-40 (N.D.Cal.1990) (awarding $10 per day for technical violation where no prejudice was shown); Dehner v. Kansas City Southern Ind., 713 F.Supp. 1397, 1401-02 (D.Kan.1989) (awarding $20 per day for delay, despite unreasonableness of plaintiff's initial request for documents); Porcellini v. Strassheim Printing Co., 578 F.Supp. 605, 614 (E.D.Pa.1983) (awarding $25 per day for unexcused three-month delay resulting from administrator's indifference to claimant's requests).
 
 
 20
 The district court found that Mrs. Glocker was not prejudiced because she was timely furnished relevant portions of the handbook and pages of the MSB-I pertaining to custodial care. It found that the Comprehensive Medical Expense Benefit-VI (CMEB-VI), which pertains to employees not entitled to Medicare, and the Medicare Supplemental Benefit (MSB-I), which pertained to Mr. Glocker, were not timely provided. The district court concluded that the defendant's delay in furnishing CMEB-VI did not cause prejudice because it did not apply to Mr. Glocker. With respect to MSB-I, the court found no prejudice because Grace timely provided the pages of this document pertaining to custodial care.
 
 
 21
 Actually, Mrs. Glocker did suffer some prejudice from Grace's delay. She was unable to firmly establish her cause of action until she possessed all the documents she had requested. As we noted in Glocker I, Mrs. Glocker was unable to determine that she was entitled to de novo review until she had received the entire Plan. 974 F.2d at 544.
 
 
 22
 Moreover, the district court's observation that Mr. Glocker was not covered by CMEB-VI is only partially accurate. MSB-I states that Medicare and the Plan will "provide a level of benefits at least as high as that previously provided by the Plan alone." (A 79) MSB-I also states that benefits under Medicare are those which "Medicare will actually pay." Since Medicare does not pay for private-duty nursing, 42 U.S.C. Sec. 1395x(b)(5), Mrs. Glocker needed CMEB-VI to ascertain what her previously provided benefits would be if she prevailed on her claim for reimbursement.
 
 
 23
 Grace points out that it acted in good faith in responding to Mrs. Glocker's requests. It explains that its failure to produce the Plan was hampered by its voluminous files and was inadvertent. While the absence of bad faith is a factor in determining whether penalties are warranted, it does not of itself exonerate the failure to provide a timely statement of benefits. See Daughtrey, 3 F.3d at 1494. Section 1132(c)(1) excuses failure to comply with a request for information if it results "from matters reasonably beyond control of the administrator." Certainly, Grace's inadvertence and the complexities of its filing system were not beyond its control. Congress intended the ERISA disclosure provisions to ensure that "the individual participant knows exactly where he stands with respect to the plan...." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118 (1988) (quoting H.R.Rep. No. 93-533, p. 11 (1973)). Only by receiving Grace's entire Plan, including CMEB-VI and MSB-I, could Mrs. Glocker know all pertinent information about her procedural rights and Mr. Glocker's benefits.
 
 
 24
 The purpose of the civil penalty provision is to encourage otherwise reluctant employers to provide beneficiaries with documents without undue delay, and to punish those who remain intransigent in the face of requests for information. See Daughtrey, 3 F.3d at 1494-95. The delay in this case calls for the assessment of penalties.
 
 IV
 
 25
 Mrs. Glocker has requested that the district judge be disqualified from participating in proceedings on remand.
 
 
 26
 The court has the power under 28 U.S.C. Sec. 2106 to disqualify a district judge, but will do so only in extreme circumstances. In deciding whether a case should be reassigned on remand, this circuit has adopted the three-part test of United States v. Robin, 553 F.2d 8 (2d Cir.1977). See United States v. Guglielmi, 929 F.2d 1001, 1007 (4th Cir.1991). Under the Robin test, the court asks (1) whether the original judge could reasonably be expected upon remand to have substantial difficulty in putting out of his mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. 553 F.2d at 10.
 
 
 27
 Mrs. Glocker has failed to meet the test's first requirement. We see nothing in the record to convince us that the district judge will not adhere to our directions on remand. His prior rulings against Mrs. Glocker are not a sufficient basis for removing him from further proceedings. Our determination that the district court placed too much emphasis on Mrs. Glocker's lack of prejudice in declining to impose civil penalties does not lead us to believe the court will fail to act in an objective and fair manner in assessing penalties on remand.
 
 V
 
 28
 We remand the case with directions to the district court to award a civil penalty in a manner consistent with this opinion. The district court should take into account, among other factors, Grace's lack of bad faith, the prejudice to Mrs. Glocker, the length of the delay, the time and expense incurred by Mrs. Glocker's attorneys in their efforts to obtain Grace's Plan, and the amount needed to suitably punish Grace.
 
 
 29
 Each party shall bear its own costs.
 
 
 30
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED